HARRY W. CORB, PROSECUTOR, v. BOARD OF HEALTH OF THE TOWN OF NUTLEY ET AL., RESPONDENTS.

Submitted November 6, 1924—Decided February 26, 1925.

*Pamph. L.* 1913, *ch.* 282, *p.* 581, being a supplement to "An act relating to, regulating and providing for the government of cities, towns, townships, boroughs, villages and municipalities governed by boards of commissioners or improvement commissions in this state," approved April 25th, 1911, abolished in municipalities which had adopted such act, the offices of members of a board of health holding under the Board of Health act of 1887 (2 *Comp. Stat., p.* 2656), and they were thereafter neither *de jure* nor *de facto* officers, and their acts were nullities.

---

On *certiorari.*

Before Justices KALISCH, BLACK and CAMPBELL.

For the prosecutor, *Heine, Bradner & Laird.*

For the respondents, *William P. Hurley.*

The opinion of the court was delivered by

CAMPBELL, J.   These writs of *certiorari* bring up for review three separate judgments of conviction of the prosecutor by Charles W. Young, Esq., recorder of the town of Nutley, on December 12th, 1922.   Such judgments are based upon alleged violations of sections 79, 116 and 117 of the sanitary code of the town of Nutley, adopted September 9th, 1914.

Two reasons are urged for reversal, namely—(1) the recorder had no evidence before him which warranted the conviction; (2) the recorder had no jurisdiction, because the sanitary code upon which the complaint was based was invalid.

In 1912 the town of Nutley changed its form of government to that provided for by the act entitled "An act relating to, regulating and providing for the government of cities, towns, boroughs and other municipalities within this state," approved April 25th, 1911, commonly known as the Walsh act.   At such time Nutley had a board of health consisting of five members, as provided for by the Board of Health act of 1887.   2 *Comp. Stat., p.* 2656.

The Walsh act of 1911 provided, "and, upon the organization of the commissioners * * * elected under this act, the city council, or other governing body or bodies theretofore acting as governing body or bodies, * * * and having any other functions, shall be *ipso facto* abolished, and the terms of all councilmen or aldermen and all other officers, whether elective or appointive, shall immediately cease and determine * * *."

In *Istvan* v. *Naar*, 84 *N. J. L.* 113, this court held that the foregoing legislative language was not sufficient to have the effect of abolishing boards of health organized under the general act of 1887.   *Comp. Stat., p.* 2656 *et seq.*

This cause was decided March 4th, 1913.

On April 9th, 1913 (*Pamph. L.* 1913, *ch.* 282, *p.* 581), a supplement to the Walsh act of 1911 was approved, and provided as follows:

"Whenever the provisions of the act, to which this act is supplemental, have been adopted by any municipality, either prior or subsequent to the passage of this act, all boards and bodies, whether state or local municipal agencies, then existing in such municipality [except the board of education and the District Court or courts], shall be *ipso facto* abolished, and all the powers and duties devolved by law upon such boards and bodies shall pass to, vest in and be performed by the board of commissioners elected under the provisions of the act to which this act is supplemental; provided, however, that nothing in this act contained shall be construed to prohibit the creation of subordinate boards as authorized by paragraph 4 of section 4 of said act to which this act is supplemental."

The board of health of Nutley, created and appointed under the act of 1887, *supra*, continued in office and continued to function, and upon September 9th, 1914, adopted the sanitary code in question.

In 1917 the board of commissioners abolished the board of health appointed under the act of 1887, and in 1924 repealed the sanitary code of September 9th, 1914, and adopted a new one.

We think that the sanitary code of September 9th, 1914, was without force and effect, and never had any legal existence as a piece of municipal legislation. The board attempting to adopt and enact it had no legal existence, because by the act of April 9th, 1913, *supra*, the legislature had abolished the offices which they then held. Thereafter they were neither *de jure* nor *de facto* officers, and their acts were nullities. *Landon* v. *Gilbert*, 86 *N. J. L.* 551; *Lang* v. *Bayonne*, 74 *Id.* 455.

The recorder was therefore without jurisdiction, as the complaints alleged violations of an ordinance having no legal existence or binding force or effect.

The convictions in all three cases are therefore set aside, with costs.